# *IN THE SUPREME COURT, STATE OF WYOMING*

## 2023 WY 34

*April Term, A.D. 2023*

**April 20, 2023**

BOARD OF PROFESSIONAL
RESPONSIBILITY, WYOMING
STATE BAR,

Petitioner,

v.

COLLIN C. HOPKINS, WSB #6-4032,

Respondent.

D-23-0003

## ORDER OF DISBARMENT

[¶1]   **This matter** came before the Court upon the Board of Professional Responsibility's Report and Recommendation for Order of Disbarment, filed herein March 15, 2023, pursuant to Rule 16 of the Wyoming Rules of Disciplinary Procedure.  The Court notes Respondent has not filed an objection to the Board of Professional Responsibility's Report and Recommendation.   The Court, after a careful review of the Report and Recommendation and the file, finds that the Report and Recommendation should be approved, confirmed and adopted by the Court, and that Respondent Collin C. Hopkins should be disbarred.  It is, therefore,

[¶2]   **ADJUDGED AND ORDERED** that the Board of Professional Responsibility's Report and Recommendation for Order of Disbarment, which is attached hereto and incorporated herein, shall be, and the same hereby is, approved, confirmed, and adopted by this Court; and it is further

[¶3]   **ADJUDGED AND ORDERED** that, as a result of the conduct set forth in the Report and Recommendation for Order of Disbarment, Respondent Collin C. Hopkins shall be, and hereby is, disbarred, effective October 31, 2022, which is the effective date of termination of Respondent's membership in the Wyoming State Bar. *Matter of Hopkins*, 2022 WY 142, 519 P.3d 651 (Wyo. 2022); and it is further

[¶4]    **ORDERED** that Respondent shall comply with the requirements of the Wyoming Rules of Disciplinary Procedure, particularly the requirements found in Rule 21 of those rules.  That rule governs the duties of disbarred and suspended attorneys; and it is further

[¶5]    **ORDERED** that, pursuant to Rule 25 of the Wyoming Rules of Disciplinary Procedure, Respondent shall pay the Wyoming State Bar the amount of $359.50, which represents the costs incurred in handling this matter, as well as pay administrative fees of $1,500.00.  Respondent shall pay the total amount of $1,859.50 to the Wyoming State Bar on or before June 30, 2023.  If Respondent fails to make payment in the time allotted, execution may issue on the award; and it is further

[¶6]    **ORDERED** that the Clerk of this Court shall docket this Order of Disbarment, along with the incorporated Report and Recommendation for Order of Disbarment, as a matter coming regularly before this Court as a public record; and it is further

[¶7]    **ORDERED** that, pursuant to Rule 9(b) of the Wyoming Rules of Disciplinary Procedure, this Order of Disbarment, along with the incorporated Report and Recommendation for Order of Disbarment, shall be published in the Wyoming Reporter and the Pacific Reporter; and it is further

[¶8]    **ORDERED** that the Clerk of this Court cause a copy of this Order of Disbarment to be served upon Respondent Collin C. Hopkins.

[¶9]    **DATED** this 20th day of April, 2023.

BY THE COURT:

/s/

**KATE M. FOX**
**Chief Justice**

BEFORE THE SUPREME COURT

STATE OF WYOMING

IN THE SUPREME COURT
STATE OF WYOMING
FILED

MAR 1 5 2023

SHAWNA GOETZ, CLERK

by CHIEF DEPUTY

| | | |
|---|---|---|
| *In the matter of* | ) | |
| *COLLIN C. HOPKINS,* | ) | |
| *WSB # 6-4032,* | ) | *BPR No. 2021-072* |
| | ) | *BPR No. 2021-092* |
| *Respondent.* | ) | |

## REPORT AND RECOMMENDATION FOR ORDER OF DISBARMENT

THIS MATTER came before a Hearing Panel of the Board of Professional Responsibility for a sanction hearing via Zoom on March 9, 2023. Hearing Panel members Jeffrey A. Donnell (Chair), Katherine A. Strike and Alisha Rone were present, as was Mark W. Gifford, Bar Counsel. Respondent Collin C. Hopkins did not appear. The Hearing Panel, having heard the testimony of witnesses, having received certain exhibits and being fully advised in the premises, FINDS, CONCLUDES and RECOMMENDS as follows:

### Findings

1.     By order dated December 12, 2022, the Hearing Panel granted Bar Counsel's motion for judgment on the pleadings, holding, "The allegations of misconduct by Respondent contained in the formal charge are hereby conclusively established based upon the pleadings." The allegations of the formal charge are:

2.     On October 24, 2022, the Review and Oversight Committee (ROC) authorized Bar Counsel to bring this formal charge.

3.     Respondent Collin C. Hopkins was a private practitioner with an office in Riverton, Wyoming. He was admitted to the Wyoming State Bar in 2006 and, during the pendency of this disciplinary proceeding, announced his intention to withdraw his membership in the Wyoming

State Bar effective October 31, 2022. On November 9, 2022, the Wyoming Supreme Court issued an order terminating Respondent's Bar membership effective October 31, 2022.

4. Article I, Section 4 of the Bylaws of the Wyoming State Bar provides in relevant part, "A member's withdrawal shall not stay or otherwise affect a pending disciplinary investigation or proceeding regarding that member."

BPR No. 2021-072 (Spurlock complaint)

5. This matter arose from a litigation matter in which Respondent represented David Spurlock and Andrea Spurlock ("Spurlocks"). Spurlocks engaged Respondent to represent them with respect to a trust that was established by Mr. Spurlock's father. The trust agreement granted David Spurlock an option to purchase his father's residence. Before Respondent filed a lawsuit on Spurlocks' behalf, Mr. Spurlock wrote to Respondent, "The Trust agreement contains a no-contest clause and I want to make certain that the selling of the home is not construed as suing the trust against the terms of the C.E. Spurlock Jr. Trust. Only that the WY trust broke their agreement on the sale of the home." There is no record that Respondent responded to Mr. Spurlock's concern.

6. Notwithstanding Mr. Spurlock's concern about the consequences of filing a lawsuit, on December 7, 2020, Respondent filed a complaint in the Ninth Judicial District Court, Fremont County, Wyoming, naming Wyoming Trust Company (the trustee) and three individuals – Judith Studer, Tassma Powers and Melissa Burgardt Kegler[1] - as defendants. The lawsuit asserted claims for fraud, negligence and intentional infliction of emotional distress against the defendants and also sought removal of the trustee.

---

[1] Studer and Powers are lawyers at the firm of Schwartz, Bon, Walker & Studer in Casper. Both are officers of Wyoming Trust Company. Kegler is an employee of Wyoming Trust Company, whose place of business and registered agent is Studer's and Powers' law firm.

7.      After filing the lawsuit, Respondent neglected the matter for several months. When Mr. Spurlock inquired as to the status of the matter in January 2021, Respondent told him he was having "some issues getting one or two of the Defendants served" and assured him that they would be served by the end of the month. Respondent did not obtain service of process upon the defendants until early March 2021.[2]

8.      On April 5, 2021, the defendants filed a motion to dismiss. Respondent did not inform the Spurlocks of the motion to dismiss and did not file a timely response to the motion.

9.      On May 4, 2021, the defendants filed an answer to the Spurlocks' complaint and a counterclaim against David Spurlock. The counterclaim asserted that by filing the lawsuit in violation of the prohibition contained in the trust agreement, David Spurlock terminated his interest in the trust and therefore lacked standing to sue. The counterclaim also sought to recover attorney fees and costs from David Spurlock. Respondent did not inform the Spurlocks of the counterclaim and did not file an answer to the counterclaim.

10.      On June 2, 2021, the defendants filed a motion for entry of default on their counterclaim. Default was entered the same day. Respondent did not inform the Spurlocks of the entry of default.

11.      On June 4, 2021, Judge Jason Conder issued an order setting a hearing on the defendants' motion to dismiss on August 2, 2021. Respondent did not inform the Spurlocks of the setting.

12.      On July 1, 2021, the defendants filed a motion for entry of default judgment on the counterclaim. Respondent did not inform the Spurlocks of the motion and did not file a response.

_____

[2] Service of process was obtained upon all defendants simultaneously at the office of Schwartz, Bon, Walker & Studer.

3

13. On July 16, 2021, David Spurlock sent an email to Respondent which stated, "Collin, You do not return phone calls or emails and today I find that they have filed a counterclaim that is going into default? WOW!" Respondent did not reply.

14. On July 25, 2021, Respondent emailed a letter to David Spurlock in which he explained, "[The defendants] filed a response to our lawsuit I could not beat. They were right and I did not have the heart or the guts to tell you. What happened next was a mistake on my part and I don't know how it happened. I completely missed the compulsory counterclaim. It didn't 'go into default' because I don't care, I just missed it, and for that I'm sorry."

15. On July 27, 2021, the Spurlocks wrote a letter to Judge Conder asking for time to find another attorney. The letter explained, "My wife and I were totally unaware that a counterclaim was filed in the case and worse, that the case was entering into default. One week ago, we discovered the problem after asking another attorney to handle that case that our current attorney has been neglecting."

16. On July 29, 2021, Respondent filed a motion to reset the August 2, 2021, hearing. That motion was denied the following day.

17. On July 30, 2021, Respondent filed a motion to dismiss the defendants' counterclaim based on lack of subject matter jurisdiction.

18. On August 2, 2021, the day of the hearing, David Spurlock filed a motion to remove Respondent as plaintiffs' counsel. Respondent filed a motion to withdraw and to be relieved of having to appear at the hearing. Jackson lawyer Hunter Christensen of Cohen-Davis Law, P.C., entered an appearance on behalf of David Spurlock for the limited purpose of requesting a continuance of the August 2, 2021, hearing.

19. The August 2, 2021, hearing went forward with all parties in attendance and Mr. Christensen appearing on behalf of David Spurlock. On August 3, 2021, Judge Conder entered

4

an order giving the plaintiffs until August 17, 2021, in which to file any responsive pleadings to the defendants' motions.

20.    On August 17, 2021, Mr. Christensen filed, on the Spurlocks' behalf: (1) a response to the defendants' motion to dismiss; (2) a response to the defendants' motion for default judgment; (3) a motion for leave to file an amended complaint; and (4) a verified motion to set aside the default on grounds of "mistake, surprise, excusable neglect, inadvertence, and any other reason that justifies relief, including Plaintiff's prior attorney's personal problems, failure, misleading communications, etc."

21.    On August 19, 2021, Mr. Christensen filed a supplement to the plaintiffs' verified motion to set aside the default. Attached to the supplement was Respondent's affidavit in which he testified that he was not truthful with the Spurlocks about the defendants' motion to dismiss and was not truthful with them about the counterclaim. Respondent's affidavit recounted numerous health challenges Respondent had faced in recent years, which Respondent believed contributed to his inability to attend to the Spurlocks' case.

22.    On July 14, 2022, Judge Conder issued an order granting the defendants' motion to dismiss, denying the plaintiffs' motion for leave to file an amended complaint and granting leave to set aside the default. In setting aside the default, Judge Conder cited Respondent's affidavit as providing substantial sworn information regarding Respondent's medical and psychological diagnoses, Respondent's financial problems, Respondent's ongoing treatment and medication regimen, and Respondent's efforts to engage the Wyoming Lawyer Assistance Program (WyLAP) for assistance with his health challenges. Judge Conder noted that Respondent admitted that he misled the Spurlocks regarding their case and that he failed to respond to the counterclaim. For these and other reasons, Judge Conder set aside the default that was entered against the Spurlocks on June 2, 2021.

5

23.     Respondent violated the following Rules of Professional Conduct in his representation of the Spurlocks:

- Rule 1.3. Diligence. Rule 1.3 provides, "A lawyer shall act with reasonable diligence and promptness in representing a client." Respondent violated Rule 1.3 by neglecting to provide competent legal counsel to his client, including failing to respond to the counterclaim and failing to respond to the motion for entry of default judgment.

- Rule 1.4. Communication. Rule 1.4 requires Respondent to:

    (1) promptly inform the client of any decision or circumstance with respect to which the client's informed consent, as defined in 1.0(f), is required by these Rules;
    (2) reasonably consult with the client about the means by which the client's objectives are to be accomplished;
    (3) keep the client reasonably informed about the status of the matter; [and]
    (4) promptly comply with reasonable requests for information.

    Respondent violated this rule by failing to communicate with his clients regarding the case as set forth above.

- Rule 8.4. Misconduct. Rule 8.4(c) provides, "It is professional misconduct for a lawyer to ... engage in conduct involving dishonest, fraud, deceit and misrepresentation." As set forth above, Respondent committed numerous violations of this rule throughout the case.

### BPR 2021-092 (Edwards Rule 8.3(a) Report)

24.     On September 28, 2021, Etna lawyer Jack Edwards contacted Bar Counsel via email and raised concerns about Respondent's conduct in a matter involving Respondent's representation of Steven Hamann, concerns that, in Mr. Edwards' professional judgment, raised a substantial question as to Respondent's honesty, trustworthiness or fitness as a lawyer in other

6

respects. Edwards concluded that it was his duty under Rules 8.3(a), W.R.Prof.Cond., to bring those concerns to Bar Counsel's attention.[3]

25.  In 2014, Respondent agreed to represent Hamann and his wife in a medical malpractice claim related to Hamann's total knee replacement. In 2017, when Hamann and his wife divorced, Respondent required that Hamann and his wife sign an informed consent to Respondent's continued joint representation of the couple. They did so.

26.  In the following years, and continuing into 2021, Respondent repeatedly assured Hamann that his medical malpractice case was being advanced by Respondent. These representations were untrue.

27.  After nearly seven years passed with no apparent progress on his case, in June 2021, Hamann retained Edwards to look into the matter for a determination of whether a legal malpractice claim should be brought against Respondent. Edwards sent Respondent an email request for Hamann's file and demanded that Respondent preserve all information relating to Hamann's case.

28.  More than two months later, Respondent sent Edwards a copy of Hamann's file and an email that stated in pertinent part the following:

> I did a terrible, terrible job of communicating honestly with Steve [Hamann]. I found out early on that he did not have a malpractice case, and I told him so. I thought it was done with.
>
> Then this idea came up that he never needed the knee replacement and maybe that was malpractice. I got his hopes up by not being straightforward with him. Steve is such nice, and great, guy, I think I wanted something good to happen for him that just wasn't there. He just got shitty luck when it came to how his body reacted to the surgeries, and it cost him his career.

---

[3] Rule 8.3(a) provides, "A lawyer who knows that another lawyer has committed a violation of the Rules of Professional Conduct that raises a substantial question as to that lawyer's honesty, trustworthiness or fitness as a lawyer in other respects, shall inform the appropriate professional authority."

7

I have self-reported my failure of communication to Mark Gifford, specifically potential violations of Rules 1.4(a)(3), (4) and (5).

Secondly, should you disagree and think that there is a potential medical malpractice case that you could prove and therefore go on to sue me for legal malpractice, you need to know the following.

\*\*\*

I own nothing. I owe the IRS over a half a million dollars. I have over $100k in student loans. I have no malpractice insurance. I rent my home and my business office. I don't even own an automobile, save a 2005 (I think) Chevy truck to go back and forth to the dump.

Should you, again, be able to prove medical malpractice and then legal malpractice and get a judgment, I'll be forced to file bankruptcy. I'm living so close to the edge that it won't take much to push me of (financially – this isn't a suicide threat or anything…).

29.     Edwards asked Respondent to provide an affidavit attesting to his destitute status.

In an August 24, 2021, affidavit, Respondent restated the litany of financial issues he faced and

provided additional information about his health:

In the last four years I have been diagnosed with Epstein-Barr Syndrome and hyperthyroidism, both of which caused a massive loss in weight (about 45 pounds), a cancer scare (which turned out to be sarcoidosis, which is not cancer but still a disease which must be monitored), thyroid eye disease (or Grave's disease), a censure from the Wyoming State Bar, and finally, hypothyroidism because the medicine I was given killed my thyroid (making it so it is virtually impossible to lose any of the 50-plus pounds I regained).

Thyroid eye disease gives me great discomfort in my eyes and often causes me to have double vision.

As a result of these health issues and a recent diagnosis of depression and anxiety, I do not believe I will be practicing law much longer and therefore will have diminished earning capacity.

Respondent concluded his affidavit with, "By preparing and signing this affidavit at the request

of Mr. Hamann's new attorney, I admit to no wrongdoing and state here that I do not believe that

Mr. Hamann ever had a case for medical malpractice and that my only error was not

communicating this to Mr. Hamann."

8

30. On September 28, 2021, Edwards reported Respondent's conduct to the Office of Bar Counsel. An investigation ensued. In response to Bar Counsel's initial letter of inquiry, Respondent stated that he had self-reported violations of Rules 1.3 and 1.4 in his representation of Hamann to Bar Counsel.

31. Respondent violated the following Rules of Professional Conduct in his representation of Hamann:

- Rule 1.3. Diligence. Rule 1.3 provides, "A lawyer shall act with reasonable diligence and promptness in representing a client." Respondent violated Rule 1.3 by not pursuing Hamann's medical malpractice claim.

- Rule 1.4. Communication. Rule 1.4 requires Respondent to:

  (1) promptly inform the client of any decision or circumstance with respect to which the client's informed consent, as defined in 1.0(f), is required by these Rules;
  (2) reasonably consult with the client about the means by which the client's objectives are to be accomplished;
  (3) keep the client reasonably informed about the status of the matter; [and]
  (4) promptly comply with reasonable requests for information.

  Respondent violated this rule by failing to communicate in an accurate and straightforward manner regarding the case.

- Rule 8.4. Misconduct. Rule 8.4(c) provides, "It is professional misconduct for a lawyer to … engage in conduct involving dishonest, fraud, deceit and misrepresentation." As set forth above, Respondent committed numerous violations of this rule throughout the case.

Procedural History of This Disciplinary Proceeding

32. This disciplinary proceeding commenced with Bar Counsel's filing of a formal charge against Respondent on October 24, 2022. On November 18, 2022, Respondent submitted an answer of sorts which essentially conceded the allegations of the formal charge and stated, in

part, "Please accept this as a 'plea of guilty' and don't waste time, money or resources on any further investigation. There is no point."

33. On November 21, 2022, Bar Counsel filed a motion for judgment on the pleadings. Respondent did not file a response. On December 16, 2022, Hearing Panel Chair Donnell issued an order granting judgment on the pleadings, holding, "The allegations of misconduct by Respondent contained in the formal charge are hereby conclusively established based upon the pleadings." The order provided that the matter would be set for a sanction hearing pursuant to Rule 15(b)(3)(D), W.R.Disc.P.

34. On January 5, 2023, Hearing Panel Chair Donnell issued an order setting deadlines, dates and hearing which required the parties to file lists of witnesses and exhibits by January 17, 2023, and established a sanction hearing date via Zoom for January 24, 2023.

35. On January 17, 2023, Respondent filed a request for continuance stating, in part, "In attempting to gather evidence and secure witnesses, I have found that I cannot be prepared for the hearing on January 24th." On January 23, 2023, Hearing Panel Chair Donnell issued an order resetting the sanction hearing for March 9, 2023.

36. On March 8, 2023, Respondent sent an email stating, "I will not be participating in the hearing tomorrow, and will just stipulate to whatever you all want to do." *See* Exhibit 1.

37. Respondent did not appear for the sanction hearing. The Hearing Panel received Exhibits 1 and 2 and heard the testimony of David Spurlock, the Complainant in BPR 2021-072, and Brandi Robinson, Assistant to Bar Counsel.

### Determination of the Appropriate Sanction for Respondent's Misconduct

38. The Hearing Panel finds, in determining the appropriate sanction for Respondent's violations of Rules 1.3 and 1.4, that Respondent violated duties owed to his clients. Pursuant to ABA Sanction Standard 4.4, the Hearing Panel finds that Respondent knowingly

10

failed to perform services for the affected clients and caused serious or potentially serious injury to the affected clients. The Hearing Panel further finds that Respondent engaged in a pattern of neglect with respect to client matters and caused serious or potentially serious injury to a client. The presumptive sanction for such misconduct is disbarment.

39. The Hearing Panel finds, in determining the appropriate sanction for Respondent's violations of Rule 8.4(c), that Respondent failed to maintain personal integrity. Pursuant to ABA Sanction Standard 5.1, the Hearing Panel finds that Respondent engaged in intentional conduct involving dishonesty, fraud, deceit, or misrepresentation that seriously or adversely reflects on Respondent's fitness to practice. The presumptive sanction for such misconduct is disbarment.

40. With respect to Respondent's mental state, the Hearing Panel finds that Respondent acted with knowledge; that is, Respondent acted with conscious awareness of the nature or attendant circumstances of his conduct both without the conscious objective or purpose to accomplish a particular result.

41. The Hearing Panel finds that Respondent inflicted actual, serious injury upon his clients in both matters.

42. With respect to ABA Standard 9.22, the Hearing Panel finds the following aggravating factors:

9.22(a) Prior disciplinary offenses. Respondent received a public censure in 2020. *Board of Professional Responsibility v. Collin C. Hopkins*, 475 P.3d 263 (Wyo. 2020).

9.22(b) Dishonest or selfish motive.

9.22(c) A pattern of misconduct.

9.22(d) Multiple offenses.

11

9.22(e) Bad faith obstruction of the disciplinary proceeding by intentionally failing to comply with rules or orders of the disciplinary agency. Having requested and been granted a continuance of the hearing, Respondent's failure to appear at the hearing is inexcusable and indicative of his lack of fitness to practice law.

9.22(h) Vulnerability of the victim.

9.22(i) Substantial experience in the practice of law.

9.22(j) Indifference to making restitution.

43. Although Respondent expressed remorse for his conduct in his answer to the formal charge, the Hearing Panel has serious reservations as to whether Respondent's statement should be considered as a mitigating factor.

44. Respondent's withdrawal of his membership in the Wyoming State Bar during the pendency of this proceeding is not a factor the Hearing Panel considered as either aggravating or mitigating.

45. In applying the foregoing standards to Respondent's conduct, the Hearing Panel finds that the appropriate sanction for Respondent's professional misconduct is disbarment.

### Conclusions of Law

46. Rule 1.3, W.R.Prof.Cond., states, "A lawyer shall act with reasonable diligence and promptness in representing a client."

47. Rule 1.4, W.R.Prof.Cond., requires a lawyer to:

> (1) promptly inform the client of any decision or circumstance with respect to which the client's informed consent, as defined in 1.0(f), is required by these Rules;
> (2) reasonably consult with the client about the means by which the client's objectives are to be accomplished;
> (3) keep the client reasonably informed about the status of the matter; [and]
> (4) promptly comply with reasonable requests for information.

12

48.     Rule 8.4(c), W.R.Prof.Cond., states, "It is professional misconduct for a lawyer to ... engage in conduct involving dishonest, fraud, deceit and misrepresentation."

49.     Rule 15(b)(3)(D), W.R.Disc.P., provides, "In imposing a sanction after a finding of misconduct by the respondent, the BPR shall consider the following factors, as enumerated in the ABA Standards for Imposing Lawyer Sanctions:

(i) Whether the lawyer has violated a duty owed to a client, to the public, to the legal system, or to the profession;
(ii) Whether the lawyer acted intentionally, knowingly, or negligently;
(iii)The amount of the actual or potential injury caused by the lawyer's misconduct; and
(iv)The existence of any aggravating or mitigating factors."

50.     Violations of Rules 1.3 and 1.4 implicate Standard 4.4, "Lack of Diligence," of the ABA Standards for Imposing Lawyer Sanctions.  Standard 4.4 sets forth the following guidelines:

Absent aggravating or mitigating circumstances, upon application of the factors set out in Standard 3.0, the following sanctions are generally appropriate in cases involving a failure to act with reasonable diligence and promptness in representing a client:

4.41    Disbarment is generally appropriate when:
    (a) a lawyer abandons the practice and causes serious or potentially serious injury to a client; or
    (b) a lawyer knowingly fails to perform services for a client and cause serious or potentially serious injury to a client; or
    (c) a lawyer engages in a pattern of neglect with respect to client matters and causes serious or potentially serious injury to a client.
4.42    Suspension is generally appropriate when:
    (a) a lawyer knowingly fails to perform services for a client and causes injury or potential injury to a client, or
    (b) a lawyer engages in a pattern of neglect with respect to client matters and causes injury or potential injury to a client.
4.43    Reprimand [i.e., "public censure" under Rule 9(a)(3) of the Rules of Disciplinary Procedure] is generally appropriate when a lawyer is negligent and does not act with reasonable diligence in representing a client, and causes injury or potential injury to a client.
4.44    Admonition [i.e., "private reprimand" under Rule 9(a)(4) of the Rules of Disciplinary Procedure] is generally appropriate when a lawyer is

13

negligent and does not act with reasonable diligence in representing a client, and causes little or no actual or potential injury to a client.

51.     Violations of Rule 8.4(c) implicate ABA Standard 5.1, "Failure to Maintain Personal Integrity":

Absent aggravating or mitigating circumstances, upon application of the factors set out in Standard 3.0, the following sanctions are generally appropriate in cases involving commission of a criminal act that reflects adversely on the lawyer's honesty, trustworthiness, or fitness as a lawyer in other respects, or in cases with conduct involving dishonesty, fraud, deceit or misrepresentation:

5.11    Disbarment is generally appropriate when:
    (a) a lawyer engages in serious criminal conduct, a necessary element of which includes intentional interference with the administration of justice, false swearing, misrepresentation, fraud, extortion, misappropriation, or theft; or the sale distribution or importation of controlled substances; or the intentional killing of another; or an attempt or conspiracy or solicitation of any other commit any of these offenses; or
    (b) a lawyer engages in any other intentional conduct involving dishonesty, fraud, deceit, or misrepresentation that seriously adversely reflects on the lawyer's fitness to practice.

5.12    Suspension is generally appropriate when a lawyer knowingly engages in criminal conduct which does not contain the elements listed in Standard 5.11 and that seriously reflects on the lawyer's fitness to practice.

5.13    Reprimand [i.e., "public censure" under Rule 9(a)(3) of the Rules of Disciplinary Procedure] is generally appropriate when a lawyer knowingly engages in any other conduct that involves dishonesty, fraud, deceit, or misrepresentation and that adversely reflects on the lawyer's fitness to practice law.

5.14    Admonition [i.e., "private reprimand" under Rule 9(a)(4) of the Rules of Disciplinary Procedure] is generally appropriate when a lawyer engages in any other conduct that reflects adversely on the lawyer's fitness to practice law.

52.     The Preface to the ABA Standards includes the following discussion regarding mental state:

The mental states used in this model are defined as follows. The most culpable mental state is that of intent, when the lawyer acts with the conscious objective or purpose to accomplish a particular result. The next most culpable mental state is that of knowledge, when the lawyer acts with conscious awareness of the nature or attendant circumstances of his or her conduct both without the conscious objective or purpose to accomplish a particular result. The least

14

culpable mental state is negligence, when a lawyer fails to be aware of a substantial risk that circumstances exist or that a result will follow, which failure is a deviation of a care that a reasonable lawyer would exercise in the situation.

53.     Under the ABA Standards, "injury" is defined as "harm to a client, the public, the legal system, or the profession which results from a lawyer's misconduct. The level of injury can range from 'serious' injury to 'little or no' injury; a reference to 'injury' alone indicates any level of injury greater than 'little or no' injury." "Potential injury" is defined as "harm to a client, the public, the legal system or the profession that is reasonably foreseeable at the time of the lawyer's misconduct, and which, but for some intervening factor or event, would probably have resulted from the lawyer's misconduct."

54.     ABA Standard 9.0, entitled "Aggravation and Mitigation," provides as follows:

9.1     *Generally*
After misconduct has been established, aggravating and mitigating circumstances may be considered in deciding what sanction to impose.
9.2     *Aggravation*
    9.21     *Definition.* Aggravation or aggravating circumstances are any considerations or factors that may justify an increase in the degree of discipline to be imposed.
    9.22     *Factors which may be considered in aggravation.* Aggravating factors include:
        (a)  prior disciplinary offenses;
        (b)  dishonest or selfish motive;
        (c)  a pattern of misconduct;
        (d)  multiple offenses;
        (e)  bad faith obstruction of the disciplinary proceeding by intentionally failing to comply with rules or orders of the disciplinary agency;
        (f) submission of false evidence, false statements, or other deceptive practices during the disciplinary process;
        (g)  refusal to acknowledge wrongful nature of conduct;
        (h)  vulnerability of the victim;
        (i)   substantial experience in the practice of law;
        (j)   indifference in making restitution; and
        (k)  illegal conduct, including that involving the use of controlled substances.
9.3     *Mitigation.*

15

9.31 *Definition.* Mitigation or mitigating circumstances are any considerations or factors that may justify a reduction in the degree of discipline to be imposed.

9.32 *Factors which may be considered in mitigation.* Mitigating factors include:

    (a) absence of a prior disciplinary record;

    (b) absence of a dishonest or selfish motive;

    (c) personal or emotional problems;

    (d) timely good faith effort to make restitution or to rectify consequences of misconduct;

    (e) full and free disclosure of disciplinary board or cooperative attitude toward proceedings;

    (f) inexperience in the practice of law;

    (g) character or reputation;

    (h) physical disability;

    (i) mental disability or chemical dependency including alcoholism or drug abuse when:

        (1) there is medical evidence that the respondent is affected by a chemical dependency or mental disability;

        (2) the chemical dependency or mental disability caused the misconduct;

        (3) the respondent's recovery from the chemical dependency or mental disability is demonstrated by a meaningful and sustained period of successful rehabilitation; and

        (4) the recovery arrested the misconduct and recurrence of that misconduct is unlikely.

    (j) delay in disciplinary proceedings;

    (k) imposition of other penalties or sanctions;

    (l) remorse; and

    (m) remoteness of prior offenses.

9.4 *Factors Which Are Neither Aggravating nor Mitigating.*

The following factors should not be considered as either aggravating nor mitigating:

    (a) forced or compelled restitution;

    (b) agreeing to the client's demand for certain improper behavior or result;

    (c) withdrawal of complaint against the lawyer;

    (d) resignation prior to completion of disciplinary proceedings;

    (e) complainant's recommendation as to sanction; and

    (f) failure of injured client to complain.

55. Article I, Section 4 of the Bylaws of the Wyoming State Bar provides in relevant part, "A member's withdrawal shall not stay or otherwise affect a pending disciplinary investigation or proceeding regarding that member."

## Recommendation

Based upon the foregoing findings of fact and conclusions of law, the Hearing Panel recommends that the Court:

1.      Issue an order of disbarment of Respondent for violations of Rules 1.3, 1.4 and 8.4(c), W.R.Prof.Cond.

2.      Order Respondent to pay an administrative fee of $1,500.00 ($750.00 for each of the two complaints) as well as properly certified costs of this proceeding to the Wyoming State Bar.

Dated this 9th day of March, 2023.

Jeffrey A. Donnell
Hearing Panel Chair
Board of Professional Responsibility
Wyoming State Bar

17